May it please the Court, Robert Rigrish for Southern Brands, Inc. and its owners, Al and Rosemary Dowd. This is an appeal from a summary judgment entered in the Southern District of Indiana. There are at least three key reasons why there are genuine issues of material fact for trial on the record below. The first relates to a personal guarantee, which Knauf had the Dowds sign in 2003, which Knauf claims should apply to a 2007 promissory note executed by Mr. Dowd as president of Southern Brands, and to a series of invoices that run from 2008 through January 2012, that again, Knauf claims the personal guarantee should apply to. On two different bases, that situation presents genuine issues of material fact for trial. One, the intention of the parties in 2003, and two, under Indiana's material modification standard, which essentially holds that guarantors, who are specially protected under the law, are not held to material modifications between here, Knauf and SBI, that they haven't consented to. The second issue that presents issues for trial concerns SBI's antitrust counterclaim, which arises and relates to a conspiracy between the insulation manufacturers and their biggest customers that was in litigation in the Northern District of Georgia, ultimately resulting in a total of $112 million plus in settlements, and in that case, the court in Georgia found genuine issues of material fact for trial. SBI was a distributor who would be a party, would be a member of that class. The class was modified, right? It was settled with a different category than the original definition. The complaint was amended well outside your statute of limitations period so as to exclude distributors, right? The complaint was amended twice. The second amendment, yes, claimed to exclude distributors. What do you mean claimed to exclude? Well the court in Georgia, a year and a half later, said that the class still contained MASCO, which is a subset of the class, included at least seven distributors that we know of. But to rely on tolling, you've got to fall within the definition that's pled in the operative complaint, correct? Tolling runs from the initial complaint, which included distributors, through the time when that class is no longer a class, whether a decertification or a denial of certification, or as in this case, a judgment pleading. Counsel, you have the complaint amended to exclude distributors. At that point, under the theory of antitrust tolling, class action tolling, you can't, somebody in your client's position who is following the litigation, I know that's fictional, but the theory is that you would follow it and say, as long as I'm in that class, I can rely on them to represent my interests, right? And so when that complaint is amended, the judge grants the motion, distributors are out, why doesn't the clock start again? Because that's not what the operative case law describes. The operative case law, starting with American Pipe, including Crown Cork and Seal, as the court's decision in Sawyer, and in Hemingway, talk about the tolling extended until the class is no more. Well, none of those actually address this problem, right, the narrowing of the class in such a way as to knock out somebody who's relying on the tolling. And the cases cited below, both in the order and by Knopf, were district court decisions which to some degree address this subject, we believe, through an improper application of the Eleventh Circuit's decision in Armstrong. So what do you think, so you think you're asking us to decide a new question then? I don't believe so. I think it's really answered by Hemingway and Sawyer, Armstrong, actually the case that's cited in the district court decisions which we've distinguished, all stand for the proposition, which we don't believe is really contentious, that the class, which the whole goal of a class action is to keep people from filing other suits. Right. And in this situation, for claims against Knopf, based on its sales of insulation, that should run until a class that's broader than the amendment. We know that because of the subset, including distributors. Why don't you mean to say class actions are intended to prevent people from suing? The goal is for efficiency. That you want people to participate in the class and therefore they get the benefit of tolling. Those of you who want them to participate, they can always opt out and bring their own suit. They don't have to be part of a class action. And they can do that and that's what's called for when they're given notice of the suit and the opportunity to do so. Well, this, well, SBI had an opportunity, surely. They did not. They didn't know about the suit? No, they didn't. Well, that's ridiculous. Well, it's not because they didn't get notice. Given their unhappiness with Knopf, you'd think they'd follow Knopf's litigation fortunes. You think they never heard, they didn't, they were unaware of the class action? They first learned about the class action in the spring of 2012 as the class action was approaching settlement with MASCO and there were some publications about it. This was after Knopf had the opportunity to include SBI in the class. Again, the settlement class is broader than the definition in that second amended complaint. So the notion of tolling is based on this assumption, sometimes an heroic assumption, that the absent class members are aware of the class and are following it. That's my champion. They're going to represent me. So with that amended complaint, why doesn't that just disappear? Well, it's really the legal fiction that's cast upon this because for efficiency purposes, we don't want people bringing a multiplicity of suits. But in that situation, if you're a distributor watching and you think that, what are the names, not Southern Brands, who was the? Columbus Drywall. And you think Columbus Drywall is your champion. Columbus Drywall files this amended complaint that throws you out of a lifeboat. You've got to do something, right? And that's why the structure continues through the end of the class action process, not through some intermediate interlocutory action. I'm sorry? How large is the class? The class that was settled by the manufacturers, including Knopf in March. How large was the class? 1877. How? Pardon? 1844. 1844? And they're all distributors of insulation? Some are distributors. Some are installers. All people who purchased, as they would have to for an antitrust case, insulation product directly from the manufacturers in competition with Masco. How could SBI not be aware of such a suit? The suit seems to have included the entire insulation industry. Well, they don't know about it because- Surely an insulator would know, or you know, I mean, yeah, an insulator would know that you know all the other companies in its business that were ganging up against its enemy, Knopf. Very hard to imagine that SBI is being unaware of that. Well, if someone's in the business- You get letters, you get messages, you get trade association notices of what's going on in your industry. There was no evidence presented below of such things prior to the time. I just don't believe it. I don't believe it. Well, it's unfortunately true. SBI is in the business of- I don't see how they could have been unaware of this suit. Everybody else in their business is in this lawsuit. The evidence in the record is that they did not know and did not know until May of 2012. What do you mean evidence in the record? They said they didn't know. Yes. Okay. What other evidence is there that they didn't know? There's no evidence that they did. What's the other evidence that they didn't know? There is none. Right. Mr. Grish, could I take you back to your personal guarantee questions? I gather that's where the money is in this case. I suspect that's where Knopf will look at this. Yes. Okay. In your view, what effect does the continuing guarantee language in that 2003 guarantee have? Well, first of all, it's boilerplate inconspicuous language in the document first. What do you mean inconspicuous? This is a company, SBI. What? Can't read a page? They can't read a page and make any sense of it? Is that what you're saying? I'm referring to Indiana's adoption of the Uniform Commercial Code's definition of conspicuousness. I'm asking you about whether you think it's realistic that SBI can't read this one-page personal guarantee. It's certainly reasonable, and the law suggests that parties have an obligation to read such documents when they're produced. My only point is it's not conspicuous. So that's not an answer to my question. What effect, what legal effect does the continuing language in that guarantee have under your view? When you look at it in the context of the other documents associated with it, which is what the Indiana legal standard is, it's one factor. You have to look at the other documents that were associated with it. You seem to be giving that language no effect at all, or if it has any effect, then it means the more you borrow, the less enforceable the guarantee becomes. Well, what our position is is that Indiana law recognizes the material modification standard. And you rely there on the Essmart case. Yes, Your Honor. Which was really extraordinary, right? That's where the lessee's owners guarantee the lease obligations, right? And then after the lease begins, then the lessor starts competing with the lessee. Now, the Indiana court had no trouble saying that's a material modification. I have trouble seeing how that's comparable here. Well, I think there were other aspects of the Essmart case that show why it was applied. And again, the point there, it was applied after a trial and with a trial, which gets away from the question we have, which is, there's a genuine issue of material fact for trial from all of these documents. What exactly is that fact? What exactly is that fact, that the language didn't mean what it said? Well, the facts are that when you look at that document in the context of its circumstances and the other documents related to it, which is the legal standard in Indiana, you see that that document was presented to secure a 2003 promissory note that was paid off by 2006. Right. But it also had the continuing language in it. And it's inconceivable that Knopf would have continued extending $1.6 million in credit to Southern Brands without some form of guarantee, particularly given the history. Well, I think the evidence of the record shows that they could very well do that. In previous loans, which were for smaller amounts, when they wanted to refer back to the original personal guarantee that was executed in 1988, they referred to it in the promissory note. But when they saw the words hereafter existing, what did they think they meant? I have no idea, Your Honor, what it appears to me. And I think it's an issue for the jury. I don't understand. It seems perfectly clear. It's either now, something today, or something existing in the future. There's no ambiguity in the language. And that's a perfectly reasonable argument in front of the jury, but in the context of the other documents. Can you have a jury trial in which you say, well, this language is perfectly clear, English, but I didn't understand? I don't think that's our argument, Your Honor. Our position is that when you read that document in the context of the 2003 promissory note and the other security and the transmittal. How does that affect the words hereafter existing? Where it affects it is it explains the context in which that inconspicuous language was there. When you say context, what does hereafter existing mean? Under Indiana law, if it's a material modification, it doesn't mean that. What does it mean? I don't know what the parties intended at that time. Well, that's ridiculous. You've just read it out of the contract. Your Honor, I recognize that it's in the contract, but we have to read that contract in the context of the other documents. If you say context again, I'm going to throw up. Don't say it again. The surrounding circumstances, which is what the legal standard in Indiana calls for, shows, we believe, that there are issues of fact for trial. What does it show about the meaning of the word of the term hereafter existing? It shows that... Does it read it out of the contract? No. It shows that a jury looking at the collection of documents that the parties negotiated in the course of dealing between the parties could decide either that you're absolutely right or not. On what basis could it decide? Could it just say they didn't mean hereafter existing? I see my time's up, Your Honor. No, I don't believe they can. I think a jury has to look at it in the... Well, then, using all your context, what would it say hereafter existing means? Nothing? Again, Your Honor, I think all you can do is look at it in the circumstances. Look, answer my question. Can they read it out completely and they say this is not part of the contract? No. A jury would look at... Then what meaning could they, on your view, assign to these words hereafter existing? They could say it applied to something other than a material modification that increased fivefold the risk of liability. So the only material modification here, in your view, is the increase in the amount borrowed? I think that's the most significant. Anything else? I think that's it. Okay. So to go back to my earlier question, and it seems that the effect you're arguing is that the more they borrowed, the less enforceable the guarantee became. At what point did it become unenforceable? When Knopf and SBI agreed between themselves to exceed the credit that had been tendered with the personal guarantee, about $800,000. So the first loan beyond that amount? I think our facts, it's the loan in 2007, the promissory note saying $1.6 million or $1.8 million. But you're the party to all those loans. SBI is, yes. The Dows did not consent to it. I'm sorry? You wanted to borrow it. They did and needed to do so to continue in business. I mean, they're unable to. What concerns me, Mr. Regrish, is, look, we're talking here about just the basics of commercial credit, right? And in which personal guarantees with small businesses are absolutely critical, right? And if the kind of, I'll say the word, context or surrounding circumstances that you're suggesting is enough to neutralize a guarantee, then those guarantees aren't worth very much, are they? Well, and this is where Indiana law provides the material modification issue. It's a release valve, a protection for sureties and guarantors. There's no question that's what it is. Knopf could have... What's the best case you've got under Indiana law to say that, in essence, additional credit constitutes a material modification that eliminates the guarantee? The two cases that I would refer to are the one you've mentioned, SBART. Okay, that's not going anywhere. And second, I believe it's the Greenwald case, which sort of summarized the principle and talked about a material modification would be a change in the risk being assumed by the guarantor. Thank you. But, of course, if Knopf had believed that your interpretation was correct, wouldn't have lent SBI any more money. Well, when they did and wanted to renegotiate terms, they asked for another personal guarantee, which indicates that they did not believe the 2003 guarantee applied. They didn't mention it in 2007, but when the parties were negotiating in January 2012, they asked for another personal guarantee. That suggests to me that they did not believe that the 2003 was intended to apply to these events. But they always ask for a guarantee whenever they might call. The more personal guarantees, the better, because, of course, they leave out the personal guarantee language from the next loan. You'll say, oh, well, yeah, they never took that seriously. Well, Your Honor, our prior practice here is significant because if you go back to the earlier loans and situations where they aggregated invoices, when they wanted to have it guaranteed by the personal guarantee, Knopf made reference to it in the promissory note. This happened in the early 90s. Okay, well, thank you very much, Mr. Regrish. Ms. Kalger? May it please the Court, Ann Kalger for Knopf Insulation, GMBH, and Knopf Insulation, Inc., its successor in interest in this case. I'll start where the Court left off. We agree this is not a material alteration, but a pattern of business that the increase is not the kind of change that would be a material alteration under the law. With respect to the cases that opposing counsel was citing, it can't be just the increase in amount that is a change. It has to be a change in the nature of the obligation. Here we have notes going back to 1988, 91, 92, 96, 02. This was a continuing practice of increasing debt, reducing it to a promissory note guaranteed by a personal guarantee. With respect to opposing counsel's attempt to answer some of the questions posed to him that SBI went out and incurred this additional debt, not the Dowds as personal guarantors, the Dowds are SBI. Now, I understand that we have a legal fiction, you know, we set up the corporations and we protect the assets. That's why we needed a personal guarantee here. But Mr. Dowd and his wife were SBI. In addition, there's arguments in the briefing relating to whether certain terms in the relationships here were willingly entered into, whether the disparity in bargaining power, under those arguments, simply because Knopf is a larger company or because SBI felt the need to do in a position where its agreements and the clear terms of it are unenforceable. There's no need for a trial in this case as to the personal guarantees because the intentions of the party are irrelevant when, as Your Honor pointed out, there's clear language. It represents the guarantee of the full and prompt payment of all obligations of SBI to Knopf, howsoever created, now or hereafter existing. And it couldn't be more clear. Let me ask you a question about the class action. Had SBI ever actually received notification that there was a class action? We have not been able to confirm that SBI received actual notice of that. Did any member of the class receive notice? There were members of the, well, we have to go back and define class. Our position is that SBI was not a member of the class. So yes, members of the class, when Knopf settled for a very small amount relative to other defendants in that case, when Knopf made its settlement, the members of the class then existing, the post-amendment class, were given notice of that settlement. SBI was not a member. There was some back and forth during the opening. Wait, you say it was not a member of the settlement class. SBI was not a member of the settlement class. But wasn't it a member of the class? It was a member of the original class asserted in the original complaint. That was not certified. That was not certified and was wiped out because when the amended complaint came in, it replaced the prior complaint in all respects. That complaint no longer exists. The only complaint we have is an amended complaint. And I want to read to you from the motion for leave to amend. It says, plaintiffs seek leave primarily to redefine the class definition set forth in the original complaint to reflect that they are pursuing an action on behalf of insulation contractors, not other entities that may purchase fiberglass insulation. So there's no question as to whether there was an amendment. Contractors are the people who purchase from SBI. SBI is a distributor. So it's clear under those circumstances that the amendment occurred. And when the amendment occurred, the settlement of Knopf was after that. And so the people who properly should have received notice, received notice. Ms. Calgar, could I ask you about the account stated issue here? That's about $1.8 million, right? Yes. Okay. As I understand Indiana law in this subject, which I've struggled with before, in essence, the idea is that if there's this existing commercial relationship, you send a statement of account, the buyer is supposed to have a reasonable amount of time to object and to raise any disputes, right? Yes, Your Honor. The account stated that you've submitted with your complaint, looks like it was dated February 1st, 2012, right? Yes, Your Honor. And the complaint in this action was filed February which? February 6th, Your Honor. Five days later. Is that a reasonable amount of time or is there some other explanation as to why this would be valid? There are several other explanations. The first is that the record shows, and Judge Barker recognized both in response, or both in her order on the motion to dismiss and in the summary judgment order, is that the record through the testimony, the affidavit testimony of Bonnie Cole and the other documents representing the relationship between the parties shows that they were receiving monthly statements over a period of time. That's what you're relying on. February 1st, 2012, account statement, there's one very recent transaction for a few thousand dollars, but everything else was months earlier. Everything, yes. It wasn't like we had been building up an account since 2008, and then out of the blue in 2012. In addition, we have the recognition of Mr. Dowd and his forbearance agreement and his attempt to continue. Explain to me why that's admissible under, despite federal rule of evidence, 408. In our case, what we are doing is we're showing that he was not attempting to resolve litigation at that point. He was attempting to, and he's admitted this, and Judge Barker recognized this in her order, he was attempting to continue to do business. For him, this was just an act that was compatible with what we had been doing. Does 408 require a complaint to be on file to apply? I don't know that it does. I don't think it does. And I don't... What did you mean by this was an act? What did you mean? What was the act? We had been establishing a relationship where we brought debt under a set of documents since 1988. And in our view, this is just one more attempt for him to continue to do business. It wasn't, in our view, as a result of a threat of litigation, but rather it was a recognition that I'm going to have to do what I've done before, but they're going to want more security this time because I'm starting to get into a higher amount. I understand that, but how does that connect with Judge... What? No. How does that connect with the... With Judge Hamilton's question about the five-day, the bringing suit five days after the demand? Because prior to that, we aren't relying on the silence of five days where you can have either an implied or an explicit recognition that the amount is correct. And Mr. Dowd, as the principal of SBI, recognized in writing that that amount was correct when he was offering to enter a forbearance agreement in order to have Knopf continue to do business with him. The purpose was so that he could continue to do business with us because no one else would sell him insulation. Well, I'm having trouble following. So within this five-day period, he could have asked for forbearance? Is that the idea? No. The five-day period is one issue. And so we've addressed that issue and the fact that this is really a continuing situation where we had an account over a long period of time. So the five-day period, what I understood Judge Hamilton to be asking me was, is that a long enough period of not objecting to get you there? And I said, no, I don't think it is. But I think the fact that we've been sending him these accounts all the way through since 2008 is what gets me there. But the other question is whether that's the implied part of the analysis. The express part of the analysis is that just a few days before that February 1, 2012 statement, Mr. Dowd signed a piece of paper that said the amount that I owe is 1.876513 and some change. That's an express recognition that that was the amount owed. I'm sorry, but how does that relate to the five days? It doesn't. It does not relate to the five days. Well, they're independent. Why the five days? I don't understand. OK. The five-day period is one way of showing that we have a valid account stated. That you have what? That we have a valid claim for an account stated. Well, it has nothing to do with five days, does it? I don't understand. I thought Judge Hamilton's concern five days seemed abrupt. Didn't give SBI a real chance to negotiate further. Or to object. But I think, frankly, I'm satisfied with the long-term relationship. It's just that you can't rely on the February 1 document as the notice to, and a failure to respond to that before you file a complaint to establish an implicit agreement. But you've got a long course of dealing. But on the express issue, your express theory, I mean, the whole nature of a forbearance agreement suggests at least some potential dispute to me. And I'm troubled, you know, since we've got a rule of evidence that says we keep out settlement negotiations, that looks to me like a settlement offer from the southern brands saying, in essence, okay, I'm willing to acknowledge your claim is valid, even at least if you'll keep selling to me under these terms. And I'm troubled if we start admitting that sort of evidence to show the validity of the claim. We would note that that was not an objection made. There was no attempt to strike that as summary judgment. We would suggest that that argument's been waived. It could have been raised at the summary judgment stage and wasn't. It's raised on appeal. He noted only in response to the testimony concerning the forbearance agreement, noted only that it was done in order to continue to be able to do business with us. So if he'd executed a document that was yet another promissory note that recognized that the amount owed was $1,876,513 and that that was the correct amount owed in the form of a promissory note in the same context, then that would also suggest that that amount was correct. But I'm still lost about the five days. So SBI acknowledges this debt and then you sue immediately. But if you acknowledge the debt, why did you have to bring a lawsuit? Because eventually the parties that needed to sign the documents wouldn't sign. Wait, speak up. I'm sorry, because we couldn't get the complete relief we were looking for in terms of the package of documents that was to be signed. It included a mortgage on certain property. It included... So it wasn't just that $1,800 or what? It was a complete package of documents that was related to resolving this debt. Okay, thanks. Thank you, Your Honor. Okay, thank you, Ms. Calvert. Mr. Rigrish? Yes, Your Honor. If I may, I'd like to address the account's stated issues. The first is that that February 1st statement was never given to SBI before the suit was filed. It's an attachment to the suit. That's the first it was received. That's what the record evidence shows. So the first indication that what they're claiming is an account stated came with the suit. Presumably your clients were getting monthly statements, right? They were getting prior monthly statements, which are invoices. Yeah, and except for that very last $4,000 transaction, the rest of that $1.6 million and change had all been listed for months, right? Those are invoices which were in dispute because my client had paid about $1.3 million over that same period of time that are listed in those invoices. What was done to dispute them? He disputed them with Bonnie Cole. It's in his affidavits, his declarations at the time saying, how are you crediting the money that we're paying you? And they never got an answer. We haven't gotten an answer to that in discovery in this case. So the key point here is that the account stated on which they sued, that document wasn't delivered to SBI until it was attached to the complaint. The forbearance document we've described, Ms. Calgar referred to, I'm not objecting to it in the summary judgment papers, that's because it wasn't in evidence. We didn't see it until a year after the time for filing summary judgment had passed. There are a couple places. If you look at 57 and 58, 57 is where they refiled the second Cole affidavit, which had been filed at 45, 47, and 49 without any attachments, without the forbearance agreement. At summary judgment, we referred in our reply brief to, they refer to this, but it's not there. Then when they refiled the same affidavit at 47 and 49, it still didn't attach it. It was only a year later, and without an order or notice from the court suggesting that it needed to be done, that they filed the forbearance agreement. We then immediately thereafter at 58 objected to it, included Mr. Dowd's declaration. What grounds? Two, that it was 408 evidence, and two, that Ms. Cole could not authenticate it. It was a Taft, it was the law firm's draft of document, which was one we think, we don't know, I've never seen it before that date, was associated perhaps with the new personal guarantee that they'd asked them to sign in January, which led to the litigation. If you think about a forbearance agreement, what are they forbearing? They're forbearing suit. That's what a forbearance agreement does, and it fits very directly into Rule 408, because they're offering it for a very specific purpose. They're offering it to prove the validity or amount of a liability that they've now sued on under Rule 408. Okay, well, thank you. Yes, sir. Thank you, Your Honor. Then we thank Ms. Cowdery.